RON BENDER (SBN 143364)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email:  rb@lnbyb.com, lls@lnbyb.com

Attorneys for Chapter 11 Debtor
and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.: 2:19-bk-20332-BB |
| WEST COAST DISTRIBUTION, INC., | Chapter 11 Case |
| Debtor and Debtor in Possession. | **DEBTOR'S CHAPTER 11 CASE STATUS REPORT; DECLARATION OF KHALID LEMLIH**<br><br>Status Conference<br>Date:   October 16, 2019<br>Time:   10:00 a.m.<br>Place:  Courtroom 1539<br>            255 E. Temple Street<br>            Los Angeles, CA  90012 |

**TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY JUDGE, AND ALL INTERESTED PARTIES:**

West Coast Distribution, Inc., the debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case (the "Debtor"), respectfully submits this Status Report in compliance with that certain *Order Setting Scheduling And Case Management Conference* entered by the Court on September 4, 2019 in the Debtor's case.

///

1. **Brief Description of the Debtor's business and operations, if any, and the principal assets and liabilities of the estate.**

On August 30, 2019, the Debtor commenced this bankruptcy case by filing a Voluntary Petition for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has operated its businesses and managed its affairs as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

Since 2005, the Debtor has been providing premier technology driven supply chain management, logistics warehousing, fulfillment and 3PL distributions services to clients in the apparel, retail, and lifestyle industries. The Debtor has worked with a wide range of established and rapidly growing brands. On behalf of those brands, the Debtor ships the brands' inventory daily to retailers, such as Walmart, Target, JCPenney, Kohl's, Neiman Marcus, Macy's, Bloomingdale's, and Saks Fifth Avenue.

The Debtor's operates out of three leased warehouses located at (1) 2760 Fruitland Avenue, Vernon, California 90058 (120,000 sf); (2) 2602 E. 37th Street Vernon, CA 90059 (171,000 sf); and (3) 12828 Carmenita Road, Santa Fe Springs, CA 90670 (268,000 sf). The three warehouses are located within 10 miles of one another, which allows the Debtor to reallocate employees to the particular warehouse that needs the labor at a moment's notice. The ability to staff each warehouse based upon the need on a particular day allows the Debtor to be extremely efficient and competitive within its industry.

The Debtor enters into agreements with its customers based upon each customer's needs. The services available to each customer include, but are not limited to, storing of inventory, fulfillment (shipping to various retailers as needed), and processing returns from retailers.

The Debtor uses information technology in connection with its warehouse management system to streamline the process of automating, integrating, and tracking all activities performed within its facilities. The performed activities include services, such as receiving, put away, picking & packing, and shipping. The utilization of the system brings great efficiency and accuracy, which translates into better services and cost savings for the Debtor's clients.

1    Each year through the Debtor's product fulfillment center and finishing facilities, the

2   Debtor handles over 90 million garment units and 45 million flat folds for major brands,

3   totaling over $1 billion worth of merchandise annually.

4    The benefits of the Debtor's information technology in warehousing for its customers

5   include: having visibility into inventory, orders, customized reports, invoices, and other data;

6   having access to real-time information throughout each phase of the logistics process; enjoying

7   reduced costs, stemming from optimized efficiencies; and having an overall competitive

8   advantage in the marketplace due to an optimized supply chain. In other words, the Debtor's

9   warehouse management system is helping the Debtor's customers control inventory, view and

10   manage all warehousing processes in real time, and reduce their overall logistics expenses, as

11   they improve their own efficiency through the visibility that the Debtor provides.

12    The Debtor's principal assets consist of its cash on hand, its accounts receivable, which

13   total approximately $1.2 million, the security deposits held by the Debtor's landlords and the

14   Debtor's leasehold interests held in connection with the leases of the warehouses out of which

15   the Debtor operates.

16    The Debtor's primary pre-petition liabilities consist of the approximately $1,044,270.37

17   of secured debt owed to the Debtor's principal, Jilal El Basri, and substantial amounts owed to

18   the Debtor's pre-petition staffing agencies, which supply (or supplied) most of the Debtor's

19   employees. As discussed in more detail below, the overwhelming largest unsecured creditor is

20   Workforce Enterprises WFE, Inc. ("Workforce"), which, as explained below, obtained a pre-

21   petition judgment against the Debtor in the amount of $4,255,370.44.

22    **2.   What precipitated the bankruptcy filing?**

23    In 2015, the Debtor decided to expand its operations and customer base.  However, in

24   doing so it grew too rapidly and the result was that although the Debtor's quantity increased, its

25   quality in services rapidly declined. Originally, the Debtor believed that in expanding its

26   business, even if it affected the Debtor's quality of services, the expansion would pay off in the

27   long run. However, this strategy proved to fail when the Debtor's customers started to suffer and

28   the Debtor accumulated large debts and started to run out of cash to finance the growth.

1    Employees were overworked and started to quit, customer service quality declined, and

2    warehouse space operated at close to 200% of the maximum capacity, which affected cost of

3    goods sold.  Furthermore, shipping errors started to accumulate, which resulted in chargebacks

4    from customers that the Debtor had to absorb.

5        During this time, the Debtor acquired many new customers.  As a result, the Debtor

6    needed to increase its footprint by several hundred thousand square feet.  In order to accomplish

7    this task, the Debtor had to re-invest its profits and borrow funds in order to finance its growth

8    plan.  The Debtor financed some of the growth through a loan, extended terms with vendors, and

9    capital contribution from its principals.

10       In late 2017, the Debtor lost some of its new customers. This loss coupled with the debts

11    incurred as a result of the Debtor's attempted expansion left the Debtor in a situation where the

12    Debtor no longer had the new customer income to service its increased debt. Ultimately, the

13    Debtor came to the realization that its attempted growth plan was unsuccessful in terms of the

14    projected revenue that had motivated the growth plan in the first place.

15       In 2018, the Debtor decided to consolidate some of its facilities by closing one of its

16    facilities located in Pico Rivera, which helped to stabilize the Debtor's business and cash flow.

17    However, the Debtor remained behind on its payments, including on payments owed to its

18    staffing agencies that supply the majority of the Debtor's labor force.

19       On May 13, 2019, one of the Debtor's staffing agencies, Workforce, obtained a pre-

20    petition judgment against the Debtor in the amount of $4,255,370.44 (the "Judgment").

21    Thereafter, during the avoidable preference period on July 18, 2019, Workforce recorded an

22    abstract of Judgment with the Los Angeles Recorder's Office  Based upon the results of a UCC

23    Search dated August 26, 2019 obtained by the Debtor, Workforce has not recorded a notice of

24    lien as a result of the Judgment with the California Secretary of State. Between the Judgment and

25    the Debtor's other pre-petition debt, the Debtor did not have the ability to satisfy its pre-petition

26    debt or to stop legal pursuit of its creditors, a number of whom commenced pre-petition

27    litigation.  While the Debtor believes that it is has a viable business that will succeed long into

28    the future, the Debtor has no financial ability to pay off its extensive current debt.  The Debtor

1    made extensive efforts to try to settle the large debt owing to Workforce but no such settlement

2    was possible.

3         Without a restructuring or significant reduction in the amount of the Debtor's current

4    debt, the Debtor would be forced to shut down and liquidate its business, which the Debtor

5    believes would result in no distribution to the Debtor's general unsecured creditors, cause the

6    loss of hundreds of jobs of the Debtor's employees, and cause a massive disruption to the

7    Debtor's many customers.  In order to protect its assets and operations, maintain and enhance the

8    going concern value of the Debtor's business, and avoid a shut down and liquidation of the

9    Debtor's business, the Debtor filed its bankruptcy case.

10         **3.   What does the debtor hope to accomplish in this chapter 11 case?**

11         The Debtor intends to restructure its debt through a confirmed plan of reorganization or,

12    if that proves not to be possible, the Debtor intends to proceed with a sale of its assets for the

13    highest price possible under the circumstances.  As a result of the Debtor's inability to reach an

14    agreement with Workforce on the terms of a plan of reorganization that the Debtor can afford

15    and which are feasible, it is the Debtor's current intention to proceed with an auction sale in the

16    near future.  The Debtor intends to request the Court to approve bidding/auction procedures at

17    the case status conference on October 16.

18         **4.   What are the principal disputes or problems likely to be encountered**

19              **during the course of the debtor's reorganization efforts?**

20         There are two principal disputes that may be encountered during the Debtor's case. First,

21    given that Workforce is the overwhelming largest unsecured creditor of the Debtor's, without

22    Workforce's support, it is unlikely that the Debtor can confirm a plan of reorganization.

23         The other principal dispute that may be encountered during the Debtor's case is the

24    assumption and assignment of one of the Debtor's leases for a warehouse out of which the

25    Debtor operates (the "Lease"). Prior to the Petition Date, the Debtor did everything in its power

26    to avoid filing this bankruptcy case. The Debtor considered a sale through an assignment for

27    benefit of creditors; however, the landlord for the Lease would not consent to the assumption

28    and assignment of the Lease – notwithstanding the fact that the Debtor was not in default (and

had never been in default) on the terms of the Lease. The Debtor engaged in substantial settlement discussions with landlord, but no agreement could be reached. Thus, it is possible that the landlord will object to the Debtor's assumption and/or assignment of the Lease. The Debtor is optimistic that it would prevail in any such dispute.

**5.    How does the debtor recommend that these disputes be resolved and why**?

The Debtor recommends that the Debtor attempt to engage in discussions with Workforce to determine if the parties can come to an agreement regarding the terms of a proposed plan, which would allow the Debtor to propose a plan with Workforce's support. If no agreement can be reached (and none has been reached thus far), the Debtor will move forward with selling its assets for the most money possible under the circumstances. There is not current dispute with any of the Debtor's landlords.

**6.    Has the debtor complied with all of its duties under 11 U.S.C. §§ 521, 1106 and 1107 and all applicable guidelines of the Office of the United States Trustee?**

The Debtor has complied with all of its duties under 11 U.S.C. §§ 521, 1106 and 1107 and all applicable guidelines of the Office of the United States Trustee. The Debtor has submitted its administrative compliance package to the Office of the United States Trustee (the "UST"). The Debtor has timely filed its Schedules of Assets and Liabilities and Statement of Financial Affairs. The Debtor has also participated in its initial debtor interview with the UST. The Debtor's Section 341(a) meeting of creditors is scheduled for October 8, 2019.

**7.    Do any parties claim an interest in cash collateral of the debtor?**

The sole party that asserts an interest in the Debtor's cash collateral is the Debtor's sole owner, Jilali El Basri, and Mr. El Basri has consented to the Debtor's cash collateral use

**8.    Is the debtor using cash that any party claims as its cash collateral?**

Yes. Jilali El Basri, the Debtor's sole owner and the sole party that asserts an interest in the Debtor's cash, has consented to the Debtor's use of cash collateral.

**9. The identity of all professionals retained or to be retained by the estate, the dates on which applications for employment of such professionals were filed, the dates on which orders were entered, and a general description of the type of services to be rendered by each or the purpose of the employment.**

On September 3, 2019, the Debtor filed and served its application to employ Levene, Neale, Bender, Yoo & Brill L.L.P. as its general bankruptcy counsel. The Court granted that application at a hearing held on October 2, 2019.

On September 27, 2019, the Debtor filed and served its application to employ Fineman West Co. LLP. as its accountant. That application is pending before the Court.

The Debtor is in the process of filing an application to employ Sherwood Partners as the Debtor's sales agent.  Sherwood Partners conducted an extensive pre-petition sale process.

The Debtor may at a later time file applications to employ special counsel.

**10. In operating cases, evidence regarding projected income and expenses for the first six months of the case.**

Attached as Exhibit 1 hereto is a cash flow statement.

**11. Proposed deadlines for the filing of claims and objections.**

The Court has not yet set a bar date by which parties who wish to assert pre-petition claims against the Debtor must file and serve proofs of claim. Until the bar date has been set and passed, the Debtor will not know the existence of how many, the amount and the complexity of the disputed claims that will be asserted against the Debtor's estate and therefore, will not be able to estimate the amount of time it will require to object to such claims until after the bar date passes. Therefore, the Debtor believes that it is premature to set a deadline for the filing of objections to claims. However, the Debtor requests that the Court set a deadline for the filing of pre-petition claims that is approximately 60 days from the date of the status conference.

**12. Proposed deadline for the filing of a plan and disclosure statement.**

The Debtor is still exploring whether it should proceed with a plan of reorganization or an asset sale. Until the Debtor determines the best exit strategy for its case, the Debtor believes

that it is premature to set a deadline for filing of a plan and disclosure statement. Additionally, since the Debtor's case has only been pending for a little more than one month, the Debtor submits that it would be premature for the Court to set a deadline for the filing of a plan and disclosure statement.

    **13. <u>A discussion of any significant unexpired leases and executory contracts to which the debtor is a party and the debtor's intentions with regard to these leases and contracts.</u>**

  The Debtor is a party to three real property leases (or in one case a sublease) for the three warehouses out of which the Debtor operates its business. The Debtor will likely seek to assume, and if the Debtor proceeds with a sale of the Debtor's assets, assign these leases to the Debtor's purchaser – to the extent that such purchaser wants to take an assignment of the leases.

Dated: October 2, 2019    WEST COAST DISTRIBUTION, INC.


By: */s/ Lindsey L. Smith*
    Ron Bender
    Lindsey L. Smith
    LEVENE, NEALE, BENDER,
    YOO & BRILL L.L.P.
    Attorneys for
    Chapter 11 Debtor and
    Debtor in Possession

### DECLARATION OF KHALID LEMLIH

I, Khalid Lemlih, hereby declare as follows:

1.    I am over 18 years of age. I am the Vice President of Operations of West Coast Distribution, Inc. (the "Debtor"), the debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case, and I am therefore familiar with the business operations and financial books and records of the Debtor.  I have personal knowledge of the facts set forth below and, if called to testify, I would and could competently testify thereto.

2.    I have access to the Debtor's books and records.  I am familiar with the history, organization, operations and financial condition of the Debtor.  The records and documents referred to in this Declaration constitute writings taken, made, or maintained in the regular or ordinary course of the Debtor's business at or near the time of act, condition or event to which they relate by persons employed by the Debtor who had a business duty to the Debtor to accurately and completely take, make, and maintain such records and documents.  The statements set forth in this declaration are based upon my own personal knowledge and my knowledge of the Debtor's books and records.

3.    On August 30, 2019, the Debtor commenced this bankruptcy case by filing a Voluntary Petition for relief under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtor has operated its businesses and managed its affairs as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4.    Since 2005, the Debtor has been providing premier technology driven supply chain management, logistics warehousing, fulfillment and 3PL distributions services to clients in the apparel, retail, and lifestyle industries.  The Debtor has worked with a wide range of established and rapidly growing brands.  On behalf of those brands, the Debtor ships the brands' inventory daily to retailers, such as Walmart, Target, JCPenney, Kohl's, Neiman Marcus, Macy's, Bloomingdale's, and Saks Fifth Avenue.

5.    The Debtor's operates out of three leased warehouses located at (1) 2760 Fruitland Avenue, Vernon, California 90058 (120,000 sf); (2) 2602 E. 37th Street Vernon, CA 90059 (171,000 sf); and (3) 12828 Carmenita Road, Santa Fe Springs, CA 90670 (268,000 sf).

The three warehouses are located within 10 miles of one another, which allows the Debtor to reallocate employees to the particular warehouse that needs the labor at a moment's notice. The ability to staff each warehouse based upon the need on a particular day allows the Debtor to be extremely efficient and competitive within its industry.

6.  The Debtor enters into agreements with its customers based upon each customer's needs. The services available to each customer include, but are not limited to, storing of inventory, fulfillment (shipping to various retailers as needed), and processing returns from retailers.

7.  The Debtor uses information technology in connection with its warehouse management system to streamline the process of automating, integrating, and tracking all activities performed within its facilities. The performed activities include services, such as receiving, put away, picking & packing, and shipping. The utilization of the system brings great efficiency and accuracy, which translates into better services and cost savings for the Debtor's clients.

8.  Each year through the Debtor's product fulfillment center and finishing facilities, the Debtor handles over 90 million garment units and 45 million flat folds for major brands, totaling over $1 billion worth of merchandise annually.

9.  The benefits of the Debtor's information technology in warehousing for its customers include: having visibility into inventory, orders, customized reports, invoices, and other data; having access to real-time information throughout each phase of the logistics process; enjoying reduced costs, stemming from optimized efficiencies; and having an overall competitive advantage in the marketplace due to an optimized supply chain. In other words, the Debtor's warehouse management system is helping the Debtor's customers control inventory, view and manage all warehousing processes in real time, and reduce their overall logistics expenses, as they improve their own efficiency through the visibility that the Debtor provides.

10.  The Debtor's principal assets consist of its cash on hand, its accounts receivable, which total approximately $1.2 million, the security deposits held by the Debtor's landlords

and the Debtor's leasehold interests held in connection with the leases of the warehouses out of which the Debtor operates.

11.    The Debtor's primary pre-petition liabilities consist of the approximately $1,044,270.37 of secured debt owed to the Debtor's principal, Jilal El Basri, and substantial amounts owed to the Debtor's pre-petition staffing agencies, which supply (or supplied) most of the Debtor's employees. As discussed in more detail below, the overwhelming largest unsecured creditor is Workforce Enterprises WFE, Inc. ("Workforce"), which, as explained below, obtained a pre-petition judgment against the Debtor in the amount of $4,255,370.44.

12.    In 2015, the Debtor decided to expand its operations and customer base. However, in doing so it grew too rapidly and the result was that although the Debtor's quantity increased, its quality in services rapidly declined. Originally, the Debtor believed that in expanding its business, even if it affected the Debtor's quality of services, the expansion would pay off in the long run. However, this strategy proved to fail when the Debtor's customers started to suffer and the Debtor accumulated large debts and started to run out of cash to finance the growth. Employees were overworked and started to quit, customer service quality declined, and warehouse space operated at close to 200% of the maximum capacity, which affected cost of goods sold. Furthermore, shipping errors started to accumulate, which resulted in chargebacks from customers that the Debtor had to absorb.

13.    During this time, the Debtor acquired many new customers. As a result, the Debtor needed to increase its footprint by several hundred thousand square feet. In order to accomplish this task, the Debtor had to re-invest its profits and borrow funds in order to finance its growth plan. The Debtor financed some of the growth through a loan, extended terms with vendors, and capital contribution from its principals.

14.    In late 2017, the Debtor lost some of its new customers. This loss coupled with the debts incurred as a result of the Debtor's attempted expansion left the Debtor in a situation where the Debtor no longer had the new customer income to service its increased debt. Ultimately, the Debtor came to the realization that its attempted growth plan was unsuccessful in terms of the projected revenue that had motivated the growth plan in the first place.

15.     In 2018, the Debtor decided to consolidate some of its facilities by closing one of its facilities located in Pico Rivera, which helped to stabilize the Debtor's business and cash flow. However, the Debtor remained behind on its payments, including on payments owed to its staffing agencies that supply the majority of the Debtor's labor force.

16.     On May 13, 2019, one of the Debtor's staffing agencies, Workforce, obtained a pre-petition judgment against the Debtor in the amount of $4,255,370.44 (the "Judgment"). Thereafter, during the avoidable preference period on July 18, 2019, Workforce recorded an abstract of Judgment with the Los Angeles Recorder's Office  Based upon the results of a UCC Search dated August 26, 2019 obtained by the Debtor, Workforce has not recorded a notice of lien as a result of the Judgment with the California Secretary of State. Between the Judgment and the Debtor's other pre-petition debt, the Debtor did not have the ability to satisfy its pre-petition debt or to stop legal pursuit of its creditors, a number of whom commenced pre-petition litigation.  While the Debtor believes that it is has a viable business that will succeed long into the future, the Debtor has no financial ability to pay off its extensive current debt.  The Debtor made extensive efforts to try to settle the large debt owing to Workforce but no such settlement was possible.

17.     Without a restructuring or significant reduction in the amount of the Debtor's current debt, the Debtor would be forced to shut down and liquidate its business, which the Debtor believes would result in no distribution to the Debtor's general unsecured creditors, cause the loss of hundreds of jobs of the Debtor's employees, and cause a massive disruption to the Debtor's many customers.  In order to protect its assets and operations, maintain and enhance the going concern value of the Debtor's business, and avoid a shut down and liquidation of the Debtor's business, the Debtor filed its bankruptcy case.

18.     The Debtor intends to restructure its debt through a confirmed plan of reorganization or, if that proves not to be possible, the Debtor intends to proceed with a sale of its assets for the highest price possible under the circumstances.  As a result of the Debtor's inability to reach an agreement with Workforce on the terms of a plan of reorganization that the Debtor can afford and which are feasible, it is the Debtor's current intention to proceed with an

auction sale in the near future.   The Debtor intends to request the Court to approve bidding/auction procedures at the case status conference on October 16.

19.   There are two principal disputes that may be encountered during the Debtor's case. First, given that Workforce is the overwhelming largest unsecured creditor of the Debtor's, without Workforce's support, it is unlikely that the Debtor can confirm a plan of reorganization.

20.   The other principal dispute that may be encountered during the Debtor's case is the assumption and assignment of one of the Debtor's leases for a warehouse out of which the Debtor operates (the "Lease"). Prior to the Petition Date, the Debtor did everything in its power to avoid filing this bankruptcy case. The Debtor considered a sale through an assignment for benefit of creditors; however, the landlord for the Lease would not consent to the assumption and assignment of the Lease – notwithstanding the fact that the Debtor was not in default (and had never been in default) on the terms of the Lease. The Debtor engaged in substantial settlement discussions with landlord, but no agreement could be reached. Thus, it is possible that the landlord will object to the Debtor's assumption and/or assignment of the Lease.  The Debtor is optimistic that it would prevail in any such dispute.

21.   The Debtor recommends that the Debtor attempt to engage in discussions with Workforce to determine if the parties can come to an agreement regarding the terms of a proposed plan, which would allow the Debtor to propose a plan with Workforce's support.  If no agreement can be reached (and none has been reached thus far), the Debtor will move forward with selling its assets for the most money possible under the circumstances.  There is not current dispute with any of the Debtor's landlords.

22.   The Debtor has complied with all of its duties under 11 U.S.C. §§ 521, 1106 and 1107 and all applicable guidelines of the Office of the United States Trustee. The Debtor has submitted its administrative compliance package to the Office of the United States Trustee (the "UST").  The Debtor has timely filed its Schedules of Assets and Liabilities and Statement of Financial Affairs. The Debtor has also participated in its initial debtor interview with the UST. The Debtor's Section 341(a) meeting of creditors is scheduled for October 8, 2019.

23.    The sole party that asserts an interest in the Debtor's cash collateral is the Debtor's sole owner, Jilali El Basri, and Mr. El Basri has consented to the Debtor's cash collateral use

24.    On September 3, 2019, the Debtor filed and served its application to employ Levene, Neale, Bender, Yoo & Brill L.L.P. as its general bankruptcy counsel. The Court granted that application at a hearing held on October 2, 2019.

25.    On September 27, 2019, the Debtor filed and served its application to employ Fineman West Co. LLP. as its accountant. That application is pending before the Court.

26.    The Debtor is in the process of filing an application to employ Sherwood Partners as the Debtor's sales agent.  Sherwood Partners conducted an extensive pre-petition sale process.

27.    The Debtor may at a later time file applications to employ special counsel.

28.    Attached as Exhibit 1 hereto is the Debtor's cash flow statement.

29.    The Debtor is a party to three real property leases (or in one case a sublease) for the three warehouses out of which the Debtor operates its business. The Debtor will likely seek to assume, and if the Debtor proceeds with a sale of the Debtor's assets, assign these leases to the Debtor's purchaser – to the extent that such purchaser wants to take an assignment of the leases.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 2nd day of October 2019 at Los Angeles, California.

KHALID LEMLIH

**EXHIBIT "1"**

| | 9/1/2019 | 9/8/2019 | 9/15/2019 | 9/22/2019 | 9/29/2019 | 10/6/2019 | 10/13/2019 | 10/20/2019 | 10/27/2019 | 11/30/2019 | 12/31/2019 | 1/31/2020 | 2/29/2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash as of | 365,000 | 66,200 | 307,200 | 586,809 | 613,559 | 777,009 | 333,829 | 577,779 | 595,388 | 758,838 | 855,688 | 852,297 | 608,303 |
| Collection | 0 | 500,000 | 450,000 | 450,000 | 450,000 | 450,000 | 550,000 | 450,000 | 450,000 | 2,300,000 | 2,200,000 | 2,100,000 | 2,300,000 |
| **Total Cash** | **365,000** | **566,200** | **757,200** | **1,036,809** | **1,063,559** | **1,227,009** | **883,829** | **1,027,779** | **1,045,388** | **3,058,838** | **3,055,688** | **2,952,297** | **2,908,303** |
| | | | | | | | | | | | | | |
| Disbursements | | | | | | | | | | | | | |
| Agencies | 0 | 66,000 | 110,000 | 250,000 | 240,000 | 250,000 | 240,000 | 250,000 | 240,000 | 1,200,000 | 1,200,000 | 1,275,000 | 1,285,500 |
| Security Guard | | | | | 8,900 | 8,900 | 8,900 | 8,900 | 8,900 | 45,000 | 45,000 | 45,000 | 45,000 |
| Rent | 298,800 | | | | | 410,200 | | | | 416,850 | 416,850 | 416,850 | 416,850 |
| Forklift Rental | | | 16,500 | 11,000 | 8,000 | | 16,500 | 11,000 | 8,000 | 33,800 | 33,800 | 33,800 | 33,800 |
| Equipment lease (Copier, scanner, fax, etc - Kyocera) | | | 3,900 | | | | 3,900 | | | 3,900 | 3,900 | 3,900 | 3,900 |
| Health Insurance | | 13,500 | | | | 13,500 | | | | 13,500 | 13,500 | 13,500 | 13,500 |
| Liability Insurance | | | 4,500 | | | | 4,500 | | | 4,500 | 4,500 | 4,500 | 4,500 |
| Auto Insurance | | | | | 500 | | | | 500 | 500 | 500 | 500 | 500 |
| Workers Comp | | | 3,000 | | | 3,000 | | | | 3,000 | 3,000 | 3,000 | 3,000 |
| Secured Creditors | | | | | | | | | | | | | |
| Wells Fargo - Racking System | | | 12,100 | | | | 12,100 | | | 12,100 | 12,100 | 12,100 | 12,100 |
| HYG - Forklift | | | 6,000 | | | | 6,000 | | | 6,000 | 6,000 | 6,000 | 6,000 |
| Utility Deposits | | 32,500 | | | | | | | | | | | |
| Utilities | | | | | | 32,500 | | | | 35,000 | 35,000 | 35,000 | 35,000 |
| Supplies Purchases | | | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 85,000 | 85,000 | 87,500 | 90,000 |
| Bank Charge | | | | 1,600 | | | | 1,600 | | 1,500 | 1,500 | 1,500 | 1,500 |
| Legal and Accounting | | | | | | | | | | | | | |
| Consulting | | | | | | 15,000 | | | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Parcel (FedEx/UPS) | | | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 1,000 | 1,000 | 1,000 | 1,000 |
| Container Movement | | | 500 | | 500 | | 500 | | 500 | 1,000 | 1,000 | 1,000 | 1,000 |
| Boiler Machine Maintenance | | | 241 | | | | | 241 | | | 241 | 241 | 241 |
| Propane | | | 900 | 900 | 900 | 900 | 900 | 900 | 900 | 3,500 | 3,500 | 3,500 | 3,500 |
| Wages (BBSI - Barrett Business Services, Inc.) | | 125,000 | | 125,000 | | 125,000 | | 125,000 | | 250,000 | 250,000 | 250,000 | 250,000 |
| Wages (Customized) - non Insiders | | 22,000 | | 22,000 | | 22,000 | | 22,000 | | 44,000 | 44,000 | 44,000 | 44,000 |
| Wages (Customized) - Insiders | | | | | | | | | | 28,000 | 28,000 | 28,000 | 28,000 |
| UST Fees | | | | | 14,430 | | | | | | | 63,103 | |
| **Total Disbursements** | **298,800** | **259,000** | **170,391** | **423,250** | **286,550** | **893,180** | **306,050** | **432,391** | **286,550** | **2,203,150** | **2,203,391** | **2,343,994** | **2,293,891** |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| Ending Cash Available | 66,200 | 307,200 | 586,809 | 613,559 | 777,009 | 333,829 | 577,779 | 595,388 | 758,838 | 855,688 | 852,297 | 608,303 | 614,412 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90017.

A true and correct copy of the foregoing document entitled **Debtor's Chapter 11 Case Status Report; Declaration of Khalid Lemlih** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.    TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **_October 2, 2019_**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Jessica L Bagdanov on behalf of Interested Party Courtesy NEF
jbagdanov@bg.law, ecf@bg.law

Ron Bender on behalf of Debtor West Coast Distribution, Inc.
rb@lnbyb.com

Richard H Golubow on behalf of Interested Party Montage Fulfillment, LLC
rgolubow@wcghlaw.com, pj@wcghlaw.com;jmartinez@wcghlaw.com;Meir@virtualparalegalservices.com

Jeffrey A Krieger on behalf of Interested Party Jeffrey A. Krieger
jkrieger@ggfirm.com, kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com

Kenneth G Lau on behalf of U.S. Trustee United States Trustee (LA)
kenneth.g.lau@usdoj.gov

Lindsey L Smith on behalf of Debtor West Coast Distribution, Inc.
lls@lnbyb.com, lls@ecf.inforuptcy.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Reed S Waddell on behalf of Interested Party Courtesy NEF
rwaddell@frandzel.com, sking@frandzel.com

Alan J Watson on behalf of Interested Party Alan W. Watson
alan.watson@hklaw.com, rosanna.perez@hklaw.com

☐ Service information continued on attached page

**2.    SERVED BY UNITED STATES MAIL**:  On **_October 2, 2019_**, I will serve the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Courtesy Copy
The Hon. Sheri Bluebond
United States Bankruptcy Court
255 E. Temple Street, Suite 1534
Los Angeles, CA 90012

☒ Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***October 2, 2019,*** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 2, 2019 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

West Coast Distribution, Inc.
File No. 8966
Debtor, OUST, Creditors
Committee, Secured

West Coast Distribution, Inc.
2602 East 37th Street
Vernon, CA 90058

United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

Creditors Committee
Carlos M. Torres, President
Wendy Torres, Authorized Agent
C.M Supply CO.
5936 Clara St.
Bell Gardens, CA 90201

Creditors Committee
Christian J. Scali, Esq.
Robert D. Daniels, Esq.
Scalli Rasmussen
800 Wilshire Boulevard Ste 400
Los Angeles, CA 90017

Creditors Committee
Mike Butler, Principal
Kevin Butler, Authorized Agent
Western Area Security Services
2919 Burbank Blvd.
Burbank, CA 91362

Secured Creditor
HYG Financial Services Inc.
P.O. BOX 14545
Des Moines, IA 50306-3545

Secured Creditor
Jilali Elbasri
10871 Hideaway Dr
Cowan Heights, CA 92705