| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| RON BENDER (SBN 143364)<br>LINDSEY L. SMITH (SBN 265401)<br>LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.<br>10250 Constellation Blvd., Suite 1700<br>Los Angeles, California 90067<br>Telephone: (310) 229-1234; Facsimile: (310) 229-1244<br>Email:  rb@lnbyb.com, lls@lnbyb.com | |

☐ *Individual appearing without attorney*
☒ *Attorney for:* Chapter 11 Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>WEST COAST DISTRIBUTION, INC.,<br><br><br><br>Debtor(s). | CASE NO.: 2:19-bk-20332-BB<br><br>CHAPTER: 11<br><br><br>**NOTICE OF SALE OF ESTATE PROPERTY** |
|---|---|

| **Sale Date:** 11/20/2019 | **Time:** 11:00 am |
|---|---|
| **Location:**  Courtroom "1539", 255 E. Temple Street, Los Angeles, CA 90012 | |

**Type of Sale:** ☒ Public  ☐ Private          **Last date to file objections:** November 6, 2019

**Description of property to be sold:** Substantially all of the Debtors' assets (excluding cash, avoidance causes of action and certain other excluded assets) as set forth in Section 1.1 of the form template asset purchase agreement attached hereto as Exhibit C ("APA").

**Terms and conditions of sale:**  The purchase price must be cash to the Debtor's estate in an amount of at least $1,250,000, except for bidders previously authorized by the Court to submit credit bids pursuant to section 363(k) of the Bankruptcy Code. Sale is free and clear of all encumbrances.  Se APA for other terms and conditions of the sale

**Proposed sale price:** See above, and APA

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**Overbid procedure (*if any*)**: See "Bid Procedures" Order attached hereto as Exhibit A, and Notice of Sale Hearing attached hereto as Exhibit B.

**If property is to be sold free and clear of liens or other interests, list date, time and location of hearing:**

Date: November 20, 2019

Time: 11:00 a.m.

Place:  United States Bankruptcy Court, Central District of California

Courtroom "1539"

255 E. Temple Street

Los Angeles, CA 90012

**Contact person for potential bidders (*include name, address, telephone, fax and/or email address*):**

Ryan Small

Sherwood Partners, Inc.

1801 Century Park East, 25th floor

Los Angeles, CA 90067

Tele: (310) 997-2336

Fax: (310) 997-2336

Email: Rsmall@shrwood.com

Date: 10/30/2019

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# EXHIBIT "A"

RON BENDER (SBN 143364)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email:  rb@lnbyb.com, lls@lnbyb.com

Attorneys for Chapter 11 Debtor and Debtor in Possession

**FILED & ENTERED**

**OCT 22 2019**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY wesley     DEPUTY CLERK**

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

CHANGES MADE BY COURT

| | |
|---|---|
| In re: | Case No.: 2:19-bk-20332-BB |
| WEST COAST DISTRIBUTION, INC., | Chapter 11 Case |
| Debtor and Debtor in Possession. | **ORDER GRANTING DEBTOR'S MOTION TO: (1) APPROVE FORM OF ASSET PURCHASE AGREEMENT FOR PROSPECTIVE BUYERS TO USE; (2) APPROVE AUCTION SALE FORMAT, BIDDING PROCEDURES, AND BIDDING QUALIFICATION REQUIREMENTS; (3) APPROVE FORM OF NOTICE TO BE PROVIDED TO ALL CREDITORS AND INTERESTED PARTIES; AND (4) SCHEDULE A COURT HEARING TO CONSIDER APPROVAL OF THE SALE TO THE HIGHEST BIDDER** |
| | **Hearing on Motion:**<br>Date:  October 16, 2019<br>Time:  10:00 a.m.<br>Place:  Same as Below |
| | **Auction Hearing Date, Time and Location:**<br>Date:  November 20, 2019<br>Time:  11:00 a.m.<br>Place:  Courtroom 1539<br>255 E. Temple Street<br>Los Angeles, CA  90012 |

A hearing was held on October 16, 2019, at 10:00 a.m., at the above-referenced location for the Court to consider the motion (the "Bid Procedures Motion") filed as Docket Number 64 by West Coast Distribution, Inc., the debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case (the "Debtor"), for the entry of an order:

> (1)    approving the form of the Asset Purchase Agreement (the "Template APA") between the Debtor and any prospective bidder pertaining to a sale of substantially all of the Debtor's assets – excluding cash and avoidance causes of action (the "Assets") to be used by any prospective bidder who seeks to participate in the auction sale of the Assets ("Auction") as a possible buyer, with each prospective bidder to provide counsel for the Debtor and the Debtor's sales agent with a black-lined version of the Template APA showing any changes the prospective bidder desires to make;

> (2)    approving the format, bidding procedures, and bidding qualification requirements relating to the Auction;

> (3)    approving the form of notice to be provided by the Debtor to its creditors and to be provided by the Debtor's sales agent to prospective bidders; and

> (4)    scheduling the Auction and a hearing for the Court to consider approval of the Sale Motion and the sale of the Assets to the highest bidder.

The Court, having considered the Bid Procedures Motion, the pleadings filed by the Debtor in support of the Bid Procedures Motion, the responses and objections filed to the Bid Procedures Motion, and the statements, arguments, and representations of counsel and parties appearing at the hearing on the Bid Procedures Motion, and good cause appearing,

**HEREBY ORDERS AS FOLLOWS:**

1.  **The Bid Procedures Motion is GRANTED and an Auction is scheduled for November 20, 2019, commencing at 11:00 a.m., in Courtroom 1539, 255 E. Temple Street, Los Angeles, California.**

2.  Unless ordered by the Court, only qualified bidders that satisfy the requirements set forth in this Order shall have the right to participate in the Auction.

3.  The revised template asset purchase agreement (the "Template APA"), excluding schedules and exhibits, attached as Exhibit "1" to exhibits filed on October 21, 2019 [Docket No.86], is approved as an initial form of Asset Purchase Agreement between the Debtor and any prospective bidder who seeks to participate in the Auction which includes substantially all of the Assets.

4.  The Debtor shall provide notice of the Auction, in the form attached as Exhibit "2" to exhibits filed on October 21, 2019 [Docket No.86], to all of the Debtor's known creditors and to all prospective bidders as determined by the Debtor's sales agent, Sherwood Partners, Inc., after consultation with the Debtor, in a manner reasonably designed to expose the Assets to the market.

5.  In order to participate in the Auction, a prospective bidder must do each of the following:

    i.  Deliver to counsel for the Debtor and to the Debtor's sales agent, Sherwood Partners, Inc., by 5:00 p.m. PST on November 15, 2019, a black-lined version of the Template APA showing any changes the prospective bidder desires to make, including that each prospective bidder must include its proposed purchase price in the Template APA (which will be subject to overbid rights at the Auction).

ii. In addition to any debt that any prospective bidder desires to assume and any other form of consideration any prospective bidder desires to offer, each prospective bidder must agree to pay cash to the Debtor's estate of at least $1,250,000, except for bidders previously authorized by the Court to submit credit bids pursuant to section 363(k) of the Bankruptcy Code.

iii. Provide counsel for the Debtor with a cash deposit in the amount of $250,000 by 5:00 p.m. PST on November 15, 2019 that counsel for the Debtor will hold in a segregated trust account and which deposit will be non-refundable and forfeited to the Debtor's estate in the event such prospective bidder is deemed to be the winning bidder at the Auction but fails to close its purchase within fifteen (15) business days following the date of entry of the Court order approving the asset sale following the Auction (the "Sale Order"). It will be the responsibility of the winning bidder at the Auction to provide the evidence necessary to enable the winning bidder to demonstrate adequate assurance of future performance under any of the Debtor's executory contracts and unexpired leases that the winning bidder desires to take an assignment of, but obtaining such assignment may not be a condition to the winning bidder's forfeiture of its deposit if the winning bidder fails to close its purchase within fifteen (15) business days following the date of entry of the Sale Order by the Court.

iv. Provide Sherwood Partners, Inc. by 5:00 p.m. PST on November 15, 2019 evidence to demonstrate that the prospective bidder has available to it cash and/or committed financing that would enable the prospective bidder to have the financial ability to consummate its purchase of the Assets if the

prospective bidder is determined by the Court to be the highest and best bidder. Any disagreement between Sherwood Partners, Inc. and the prospective bidder over the prospective bidder's financial qualification will be resolved by the Court.

v.      If more than one qualified bidder appears at the Auction, the bid of the highest bidder as submitted in the bidder's Template APA shall constitute the initial bid at the Auction. Sherwood Partners, Inc., working in concert with the Court, will thereafter conduct the Auction. The bidding increments will be $25,000 or higher figures which are wholly divisible by $25,000.

6.      **Parties shall comply with the following deadlines:**

i.      The sale motion shall be filed and served not later than **October 30, 2019**;

ii.     Any oppositions to the sale motion are due by **November 6, 2019**;

iii.    The motion to authorize credit bidding shall be filed and served not later than **October 30, 2019** and shall be set for hearing on **November 13, 2019 at 11:00 a.m.**;

iv.     Any oppositions to the credit bidding motion are due by **November 6, 2019**; and

v.      Any replies to the credit bidding motion are due by **November 12, 2019 at 12:00 p.m.**

                                        ##

Date: October 22, 2019

                                        Sheri Bluebond
                                        United States Bankruptcy Judge

# EXHIBIT "B"

RON BENDER (SBN 143364)
LINDSEY L. SMITH (SBN 265401)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email:  rb@lnbyb.com, lls@lnbyb.com

Attorneys for Chapter 11 Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No.: 2:19-bk-20332-BB |
| | Chapter 11 Case |
| WEST COAST DISTRIBUTION, INC., | |
| | **NOTICE OF HEARING ON DEBTOR'S MOTION FOR AN ORDER: (1) APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL ENCUMBRANCES; (2) APPROVING OF THE DEBTOR'S ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS AND DETERMINING CURE AMOUNTS AND APPROVING OF THE DEBTOR'S REJECTION OF THOSE UNEXPIRED LEASES AND EXECUTORY CONTRACTS WHICH ARE NOT ASSUMED AND ASSIGNED; (3) WAIVING THE 14-DAY STAY PERIODS SET FORTH IN BANKRUPTCY RULES 6004(h) AND 6006(d); AND (4) GRANTING RELATED RELIEF** |
| Debtor and Debtor in Possession. | |
| | Hearing Date, Time and Location: |
| | Date:  November 20, 2019 |
| | Time:  11:00 a.m. |
| | Place:  Courtroom 1539 |
| | 255 E. Temple Street |
| | Los Angeles, CA  90012 |

**PLEASE TAKE NOTICE THAT** a hearing will be held on <u>**November 20, 2019**</u>, commencing at <u>**11:00 a.m.**</u>, in the above-referenced Courtroom, for the Court to consider approval of the motion (the "<u>Motion</u>") filed by West Coast Distribution, Inc., the debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case (the "<u>Debtor</u>"), seeking the entry of an order of the Court approving the Debtor's sale of substantially all of its assets (excluding cash, avoidance causes of action and certain other excluded assets) (the "<u>Purchased Assets</u>") to the party that submits the highest and best bid for the Purchased Assets (the "<u>Winning Bidder</u>") at the auction sale scheduled to be held before the Court on <u>**November 20, 2019, at 11:00 a.m.**</u> (the "<u>Auction</u>"), in accordance with the terms of the form template asset purchase agreement previously approved by the Court (the "<u>Template APA</u>"), subject to any changes to the Template APA requested by the Winning Bidder and agreed to by the Debtor and approved by the Court. Pursuant to the sale procedures order entered by the Court on October 22, 2019 as Docket Number 90 (the "<u>Sale Procedures Order</u>"), each prospective bidder who desires to participate in the Auction is required to, among other bidding requirements as approved by the Court in the Sale Procedures Order, submit their proposed markup of the Template APA by November 15, 2019 to the Debtor and to the Debtor's sales agent, Sherwood Partners, Inc. ("<u>Sherwood Partners</u>").

By way of the Motion, the Debtor is also seeking the Court's approval of the Debtor's assumption and assignment to the Winning Bidder of those unexpired leases and executory contracts of the Debtor that the Winning Bidder desires to have the Debtor assume and assign to the Winning Bidder (defined in the Template APA as the "<u>Assigned Contracts</u>"). A schedule of all of the Debtor's known executory contracts and unexpired leases (the "<u>Contracts and Leases Schedule</u>"), along with the Debtor's belief as to all outstanding cure amounts owing by the Debtor, if any, to the counter-party to each such executory contract and unexpired lease (the "<u>Cure Amounts</u>"), is attached as Exhibit "G" to the Declaration of Gladys Francisco filed in support of the Motion. By way of the Motion, the Debtor is also seeking the Court's approval of the Debtor's rejection of all of its remaining executory contracts and unexpired leases that the Winning Bidder does not desire to have the Debtor assume and assign to the Winning Bidder,

with such rejection to be effective as of the Closing Date. The Debtor has separately filed a notice of potential assumption and assignment of all of the Debtor's known executory contracts and unexpired leases and served such notice on all of the counter-parties to all of the Debtor's known executory contracts and unexpired leases, which notice sets forth the Debtor's proposed Cure Amounts and informing the parties of the deadline to object to the proposed Cure Amounts and the potential assumption and assignment of the party's executory contract/lease.

**PLEASE TAKE FURTHER NOTICE THAT** any objection to the Motion or to the sale of the Purchased Assets as contemplated by the Motion or the Debtor's assumption and assignment of the Assigned Contracts to the Winning Bidder must: (a) be in writing; (b) comply with the Bankruptcy Rules and the Local Bankruptcy Rules; and (c) be filed with the clerk of the Court and served on all the following parties: (i) the Debtor's counsel - Levene, Neale, Bender, Yoo & Brill L.L.P., Attn: Ron Bender (rb@lnbyb.com); and (ii) the U.S. Trustee, Attn: Kenneth G. Lau, 915 Wilshire Blvd, Suite 1850, Los Angeles, CA 90017 (kenneth.g.lau@usdoj.gov) **on or before November 6, 2019**.

**PLEASE TAKE FURTHER NOTICE THAT** the failure of any party in interest to file and serve a timely objection to the Motion may be deemed by the Court to constitute such party's consent to all of the relief requested by the Debtor in the Motion.

**PLEASE TAKE FURTHER NOTICE THAT** any party in interest may be able to obtain a copy of the Motion and the relevant supportive declarations from the Clerk of the Court or by making a written request of counsel to the Debtor.

Dated:  October 30, 2019

WEST COAST DISTRIBUTION, INC.

By:___*/s/ Ron Bender*_____
            Ron Bender
            Lindsey L. Smith
            LEVENE, NEALE, BENDER,
            YOO & BRILL L.L.P.
    Attorneys for Chapter 11 Debtor and Debtor in Possession

# EXHIBIT "C"

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (the "Agreement") is made as of November __, 2019, by and between _____, Inc., a _____ corporation ("Buyer"), and West Coast Distribution, Inc., a California corporation ("Seller").  Certain other capitalized terms used in this Agreement are defined in Exhibit A attached hereto.  Buyer and Seller are collectively defined herein as the "Parties" and singularly as a "Party".

### R E C I T A L S:

WHEREAS, Seller is engaged in the business of providing premier technology driven supply chain management, logistics warehousing, fulfillment and 3PL distributions services to clients in the apparel, retail, and lifestyle industries (the "Business"); and

WHEREAS, on August 30, 2019 (the "Petition Date"), Seller filed a voluntary petition (the "Bankruptcy Case") under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Central District of California, Los Angeles Division, assigned case no. 2:19-bk-20332-BB (the "Bankruptcy Court"); and

WHEREAS, Buyer desires to purchase and Seller desires to sell to Buyer the Purchased Assets, as defined below, subject to the terms and conditions of this Agreement.

### AGREEMENT

NOW, THEREFORE, in consideration of the terms, covenants, and conditions hereinafter set forth, the Parties agree as follows:

### ARTICLE I

### ASSETS BEING PURCHASED; ASSUMPTION OF LIABILITIES

**1.1    Purchased Assets.**  Subject to the terms and conditions of this Agreement, Buyer hereby agrees to purchase from Seller, and Seller hereby agrees to sell, convey, transfer and assign to Buyer, on the Closing Date (as hereinafter defined), all of Seller's right, title and interest in and to all of the assets of Seller used in connection with the Business, other than the Excluded Assets (as hereinafter defined) (the "Purchased Assets"), free and clear of all Encumbrances pursuant to Section 363 of the Bankruptcy Code.  The Purchased Assets shall include, without limitation, the following:

(a)    All of Seller's supplies, computers, printers, equipment, furniture, fixtures and other similar assets or tangible personal property owned by Seller which are identified in the fixed asset schedule attached hereto as Schedule 1.1(a) (collectively, the "Fixed Assets");

(b)    All of Seller's rights, title, interest and benefits under the agreements, contracts, licenses, instruments, commitments and understandings, written or oral that are listed (or, in the case of oral agreements or understandings, that are described) under the caption "Assigned Contracts" in Schedule 1.1(b) attached hereto;

(c) All advance payments, claims for refunds and deposits, and other prepaid items relating to the Purchased Assets or the Assumed Obligations, existing as of the Closing Date;

(d) All of Seller's accounts or notes receivable related to the Business, all of which are identified on Schedule 1.1(d) attached hereto and all schedules, records and other documentation related to such accounts or notes receivable;

(e) All of Seller's books and records directly related to, or used in connection with, the conduct of the Business or pertaining to the Purchased Assets, regardless of the medium on which such information is stored or maintained including, without limitation, all customer and employment records, vendor information and contracts, business plans and strategies, financial and operational data and reports, and marketing information and materials;

(f) To the extent transferable, all of Seller's licenses, permits or other authorizations of governmental or regulatory entities that are required under any laws, rules or regulations applicable to or affecting the Business, which are set forth on Schedule 1.1(f);

(g) All of Seller's leased real property, including any leasehold improvements thereon, all of which are identified in the real property schedule attached hereto as Schedule 1.1(g);

(h) All of Seller's inventory, a detailed list of which is set forth on Schedule 1.1(h);

(i) All of Seller's Intellectual Property Rights and all goodwill associated with such Intellectual Property Rights, including, without limitation, (i) the right to use, copy, modify, exploit, license, assign, convey and pledge the Intellectual Property Rights, (ii) the right to exclude others from using the Intellectual Property Rights, (iii) the right to sue others and collect damages for past, present and future infringement of the Intellectual Property Rights, (iv) the right to create derivatives of the Intellectual Property and retain full ownership thereof, and (v) the right to file and prosecute applications for registration, now pending or hereinafter initiated, to protect any rights in the Intellectual Property Rights, a detailed list of which is set forth on Schedule 1.1(i);

(j) All insurance benefits, including rights and proceeds, arising from or relating to the Purchased Assets or the Assumed Obligations (as defined herein) prior to the Closing Date;

(k) All of Seller's claims against third parties relating to the Purchased Assets, whether choate or inchoate, known or unknown, contingent or non-contingent;

(l) Customer lists and contact information, which customers are listed on Schedule 1.1(l); and

(m) All goodwill associated with the Business and the Purchased Assets.

**1.2** **Excluded Assets.** Purchaser shall not acquire, and Seller shall retain, all of the following assets, properties and rights owned by Seller (collectively, the "Excluded Assets").

(a) All contracts and leases of Seller that are not Assigned Contracts;

2

(b)    Subject to Section 1.1(c) above, all cash and cash equivalents of Seller;

(c)    The corporate seals, minute books, stock books, tax returns and other similar records relating to Seller's corporate organization, and all employee related or employee benefit related files or records other than personnel files of employees hired by Buyer;

(d)    Except as to the Purchased Assets, all insurance recovery rights of Seller and all tax refunds owing to Seller; and

(e)    All rights to all claims, causes of action, choses in action, rights of recovery and rights of set-off (whether choate or inchoate, known or unknown, contingent or non-contingent) in favor of Seller, and all avoidance causes of action existing under any of sections 544-553, inclusive, of the Bankruptcy Code.

**1.3    Assumed Obligations.**  Buyer hereby agrees to assume and to pay when due all of the following outstanding obligations of Seller: [Buyer to complete].  Buyer also agrees to assume all executory obligations arising after the Closing Date under the Assigned Contracts and those obligations specifically identified on Schedule 1.3 (collectively, the "Assumed Obligations").  The Assumed Obligations shall include all obligations and liabilities arising out of any default of Seller under any Assumed Obligation, regardless of when such liability or obligation is asserted.

**1.4    Liabilities Not Being Assumed.**  Except for the Assumed Obligations, Seller agrees that Buyer shall not be obligated to assume or perform and is not assuming or performing any liabilities or obligations of Seller, whether known or unknown, fixed or contingent, certain or uncertain, and regardless of when such liabilities or obligations may arise or may have arisen or when they are or were asserted (the "Retained Liabilities"), and Seller shall remain responsible for all Retained Liabilities, which shall include, without limitation, any and all of the following obligations or liabilities of Seller:

(a)    Any pre-bankruptcy compensation or benefits payable to present or past employees of Seller arising in connection with their employment by Seller, including, without limitation, any liabilities arising under any employee pension or profit-sharing plan or other employee benefit plan and any of Seller's pre-bankruptcy obligations for vacation, holiday or sick pay;

(b)    All pre-bankruptcy federal, state, local, foreign or other taxes;

(c)    All pre-bankruptcy Encumbrances on any of the Purchased Assets and all obligations and liabilities secured thereby that are not Assumed Obligations;

(d)    All pre-bankruptcy accounts or notes payable obligations for borrowed money, all purchase money obligations and any other indebtedness or payment obligations of Seller (the "Retained Debt");

(e)    Any pre-bankruptcy claims, demands, actions, suits or legal proceedings that have been asserted or threatened against Seller, the Business or the Purchased Assets or which may be threatened hereafter against the Purchased Assets, the Business or the Buyer that arises in any way from or in connection with (i) Seller's operation of the Business prior to the Petition

Date, or (ii) any other business or non-business activities of Seller conducted prior to the Petition Date; and

(f)    Any pre-bankruptcy obligations under any employment, consulting or non-competition agreement to which Seller is a party, whether written or oral, and any liabilities or obligations arising out of the termination by Seller of any of its employees in anticipation or as a consequence of, or following, consummation of the transactions contemplated hereby.

## ARTICLE II

## PURCHASE PRICE AND BANKRUPTCY MATTERS

**2.1    Purchase Price.**  As consideration for the sale to Buyer of the Purchased Assets and the assumption of the Assumed Obligations, the Buyer shall pay Seller a cash payment of _____ Dollars ($_____) by wire transfer of immediately available funds to an account designated by Seller (the "Purchase Price").  The Purchase Price shall be paid as follows:  (i) a $250,000.00 deposit (the "Deposit") shall be deposited with counsel for Seller by 5:00 p.m. PST on November 15, 2019 into a segregated trust account (the "Escrow Account"), and (ii) the $_____balance shall be wire transferred to counsel for Seller [or such other reputable and well established escrow company selected by Purchaser] within fifteen (15) business days following the date of entry of an order approving the sale of the Purchased Assets to Buyer (the "Sale Order").  If Buyer is determined by the Bankruptcy Court to be the winning bidder at the Auction and Buyer fails to consummate its purchase within fifteen (15) business days following the date of entry of the Sale Order (unless Buyer and Seller agree to extend this period), Buyer shall be deemed to have permanently forfeited the Deposit with Seller as liquidated damages.

**2.2    Allocation of Purchase Price.**  The Purchase Price shall be allocated among the Purchased Assets and the Assumed Obligations, in the manner set forth in Exhibit B attached hereto (the "Purchase Price Allocation").  In the event that Exhibit B is not completed prior to Closing, the Parties agree to complete the Purchase Price Allocation within thirty (30) days after the Closing. Each of the Parties, when reporting the transactions consummated hereunder in their respective tax returns, shall allocate the Purchase Price paid or received, as the case may be, in a manner that is consistent with the Purchase Price Allocation set forth in Exhibit B hereto.  Additionally, each of the Parties will comply with, and furnish the information required by Section 1060 of the Internal Revenue Code of 1986, as amended (the "Code"), and any regulations thereunder.

**2.3    Third Party Consents.**  Notwithstanding anything to the contrary in this Agreement, this Agreement shall not constitute an agreement to assign or transfer any governmental approval, instrument, contract, lease, permit or other agreement or arrangement, including the Assigned Contracts, or any claim, right or benefit arising thereunder or resulting therefrom if an assignment or transfer or an attempt to make such an assignment or transfer without the consent of a third party would constitute a breach or violation thereof or affect adversely the rights of the Buyer or the Seller, thereunder unless such assignment is approved by the Bankruptcy Court; and any transfer or assignment to the Buyer by Seller, as applicable, of any interest under any such instrument, contract, lease, permit or other agreement or arrangement that requires the consent of a third party shall be made subject to such consent being obtained from the contracting party or approval being obtained from the Bankruptcy Court.  In the event that any such consent or approval is not obtained on or prior to the Closing Date, the Seller shall continue to use all commercially reasonable efforts (without paying any additional consideration to the other party to such instrument, contract, lease, permit or

other agreement or arrangement regarding such asset or in connection with obtaining any approval or consent) to obtain any such approval or consent after the Closing Date as promptly as possible, and Seller will cooperate with the Buyer in any lawful and reasonable arrangement to provide that the Buyer shall receive the interest of the Seller in the benefits under any such instrument, contract, lease, or permit or other agreement or arrangement. However, it shall be the sole responsibility of Buyer to satisfy the Bankruptcy Code requirements to enable Seller to assume and assign to Buyer any of the Assigned Contracts, including that it shall be Buyer's sole responsibility to pay any required cure amounts to the counter-party to any such Assigned Contracts and to demonstrate Buyer's adequate assurance of future performance, as required, with respect to all of the Assigned Contracts.

   2.4    **Bankruptcy Matters.**

        (a)    **Payment of Cure Costs Under Assigned Contracts.**    As promptly as practicable following the execution of this Agreement, Buyer and Seller shall use commercially reasonable efforts to cooperate and determine an estimate of the amounts required to cure all defaults under each Assigned Contract so as to permit the assumption and assignment of each such Assigned Contract pursuant to Section 365 of the Bankruptcy Code (as ultimately determined by the Bankruptcy Court, the "Cure Costs").  In connection with the assignment and assumption of the Assigned Contracts, Buyer shall pay all Cure Costs on or before the Closing.

**ARTICLE III**

**REPRESENTATIONS AND WARRANTIES OF SELLER**

   Subject to the disclosures and exceptions set forth in the disclosure schedules attached hereto (the "Seller's Disclosure Schedules"), Seller hereby makes the representations and warranties set forth hereinafter in this Section 3 to the Buyer:

   **3.1    Authority and Binding Effect.**  Subject to the approval of the Bankruptcy Court, Seller has the full corporate power and authority to execute and deliver this Agreement and the Bill of Sale (as hereinafter defined).  This Agreement, the Bill of Sale and the consummation by Seller of its obligations contained herein and therein have been duly authorized by all necessary corporate actions of Seller and such agreements have been duly executed and delivered by Seller.  Subject to the approval of the Bankruptcy Court, this Agreement is a valid and binding agreement of Seller, enforceable against Seller in accordance with its terms, and, upon execution and delivery, the Bill of Sale will be a valid and binding agreement of Seller and shall be enforceable against it in accordance with its terms.  Except for the approval of the Bankruptcy Court, and except for consents that may be necessary for assignment or Assigned Contracts, it is not necessary for Seller to take any action or to obtain any approval, consent or release by or from any third person, governmental or other, to enable Seller to enter into or perform its obligations under this Agreement and the Bill of Sale.

   **3.2    Organization and Standing.**  Seller is a corporation duly organized, validly existing and in good standing under the laws of the State of California, and Seller is qualified to do business in each jurisdiction where such qualification is necessary and where the failure to be so qualified would have a Material Adverse Effect on Seller.  Seller has the requisite corporate power and authority to conduct its business as now conducted and to own or lease the Purchased Assets, and to use such Purchased Assets in the conduct of its business.

3.3    **Condition and Title to Purchased Assets.**

(a)    **Purchased Assets**.  Buyer acknowledges and agrees that it is purchasing, and shall take possession of, the Purchased Assets in their "AS IS, WHERE IS" and "WITH ALL FAULTS" condition and that it has previously been given the opportunity to conduct, and has conducted, such investigations and inspections of the Purchased Assets as it has deemed necessary or appropriate for the purposes of this Agreement.

(b)    **No Warranties Regarding Purchased Assets**.  EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, SELLER MAKES NO REPRESENTATIONS, STATEMENTS OR WARRANTIES, EXPRESS OR IMPLIED, OF ANY KIND OR NATURE WHATSOEVER CONCERNING THE PURCHASED ASSETS, INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES REGARDING THE CONDITION, QUANTITY OR QUALITY OF ANY OR ALL OF THE PURCHASED ASSETS OR CONCERNING THE PAST, PRESENT OR FUTURE PROFITABILITY OR VIABILITY OF THE BUSINESS, AND ANY AND ALL IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE DISCLAIMED HEREBY BY SELLER.

(c)    **Title to and Adequacy of Purchased Assets**.  Except as disclosed on Schedule 3.3 hereto, Seller has, and on the Closing Date will convey and transfer to Buyer, good, complete and marketable title to all of the Purchased Assets, free and clear of all Encumbrances of any nature whatsoever.  Except as set forth on Schedule 3.3, all of the Purchased Assets (excluding customers) are in the exclusive possession and control of Seller, and Seller has the unencumbered right to use, and to sell to Buyer in accordance with the terms and provisions of this Agreement, all of the Purchased Assets without interference from and free of the rights and claims of others.

3.4    **Insurance.**  Seller has delivered to Buyer true and correct copies of all policies of fire, general liability, worker's compensation, errors and omissions, malpractice and other forms of insurance maintained by or on behalf of Seller in connection with its Business as protection for the Purchased Assets.  All of such policies are now in full force and effect.  Seller has not received any notice of cancellation or material amendment of any such policies.  No coverage thereunder is being disputed; and all material claims thereunder have been filed in a timely fashion.

3.5    **Taxes and Tax Returns.**  For purposes of this Agreement (a) the term "Tax" or "Taxes" means any federal, state, local or foreign income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental (including taxes under Code Section 59A), customs duties, capital stock, franchise, profits, withholding, social security, unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty or addition thereto, whether disputed or not; and (b) the term "Tax Return" means any return, declaration, report, claim for refund, or information return or statement (including, without limitation, information returns or reports related to back-up withholding and any payments to third parties) relating to any Taxes, including any schedule or attachment thereto, and including any amendment thereof.  All Tax Returns required to be filed with any taxing authority with respect to any taxable period ending on or before the date of this Agreement, or the Closing Date, as applicable, by or on behalf of Seller, have been or will be filed when due.  All such Tax Returns are or will be true, complete and correct in all material respects.  All Taxes due and payable by Seller have been paid or accrued in the Balance Sheet, except for unpaid accruable Taxes incurred by Seller in the ordinary course of its business since the date of the Balance

Sheet.  Buyer shall have no liability or obligation whatsoever, and shall not incur any loss, expense or cost, and none of the Purchased Assets, or any assets of Buyer, shall be subjected to any Encumbrance, by reason of any Taxes arising out of (x) Seller's Business as conducted by Seller prior to the consummation of the sale hereunder of the Purchased Assets to Buyer, or (y) any other operations or activities of Seller whether conducted prior to the date hereof or hereafter.  Seller further represents and warrants that it is relying solely on its own accountants and advisors for advice as to the tax consequences to it of the transactions contemplated hereby.  Buyer shall be responsible for and obligated to pay all Taxes arising under or resulting from the sale of the Purchased Assets to Buyer.

   **3.6**  **No Broker**.  Other than Sherwood Partners which is serving as Seller's sales agent, Seller has not retained or used the services of an agent, finder or broker in connection with the transactions contemplated by this Agreement.  Seller shall pay, and shall indemnify, hold harmless and defend Buyer from and against, all commissions, finder's and other fees and expenses charged or asserted by any agent, finder or broker, by reason of any such retention or use of the services of any such agent, finder or broker by Seller.

   **3.7**  **Representations and Warranties of Seller**.  The representations and warranties of Seller contained herein do not contain any statement of a material fact that was untrue when made or omits any information necessary to make any such statement contained therein, in light of the circumstances under which such statement was made, not misleading.  The copies of all documents furnished by Seller to Buyer pursuant to the terms of this Agreement are complete and accurate copies of the original documents.

# ARTICLE IV

## REPRESENTATIONS AND WARRANTIES OF BUYER

   The Buyer hereby makes the representations and warranties set forth in this Section 4 to Seller:

   **4.1**  **Authority and Binding Effect**.  Buyer has the full corporate power and authority to execute and deliver this Agreement and the Bill of Sale (as hereinafter defined).  This Agreement and the Bill of Sale and the consummation by Buyer of its obligations contained herein and therein have been duly authorized by all necessary corporate actions of Buyer and such agreements have been duly executed and delivered by Buyer.  This Agreement is a valid and binding agreement of Buyer, enforceable against Buyer in accordance with its terms, and, upon execution and delivery, the Bill of Sale will be valid and binding agreements of Buyer and shall be enforceable against it in accordance with their terms, except as enforceability of the obligations of Buyer under this Agreement and the Bill of Sale may be limited by (i) bankruptcy, insolvency, moratorium or other similar laws affecting creditors' rights generally, and (ii) general principles of equity relating to the availability of equitable remedies (whether such agreements are sought to be enforced in a proceeding at law or a proceeding in equity).  Except for the consent of certain debt holders of Buyer, it is not necessary for Buyer to take any action or to obtain any approval, consent or release by or from any third person, governmental or other, to enable Buyer to enter into or perform its obligations under this Agreement and the Bill of Sale.

**4.2     Organization and Standing.**  Buyer is a corporation duly organized and validly existing under and is in good standing under the laws of the State of _____.  Buyer has requisite corporate power to own and operate its properties and assets, and to carry on its business as presently conducted.  Buyer is duly qualified to do business and is in good standing in each jurisdiction in which the character of the business conducted by it or the location of the properties owned or leased by it make such qualification necessary, except for jurisdictions in which the failure to so qualify would not have a Material Adverse Effect on Buyer.

**4.3     Compliance with Other Instruments.**   The execution and delivery of this Agreement, the Bill of Sale and all other agreements to be entered into in connection herewith and the consummation of the transactions contemplated hereby and thereby will not conflict with or result in any violation of any law, rule, regulation, judgment, order, decree or ordinance applicable to Buyer or its properties or assets, or conflict with or result in any breach or default (with or without notice or lapse of time, or both) under, or give rise to a right of termination, cancellation or acceleration of any obligation or to loss of a material benefit, under (i) any provision of the Certificate of Incorporation or bylaws of Buyer; or (ii) any material agreement, contract, note, mortgage, indenture, lease, instrument, permit, concession, franchise or license or any writ, order or decree to which Buyer is a party or by which Buyer or any of its property is bound and which would have a Material Adverse Effect on Buyer.

**4.4     Governmental Consent, etc.**  No consent, approval, order or authorization of, or registration, declaration or filing with, any governmental entity is required by or with respect to Buyer in connection with the execution and delivery of this Agreement or the consummation by Buyer of the transactions contemplated hereby, except for such consents, approvals, orders, authorizations, registrations, declarations and filings which if not obtained or made would not have a Material Adverse Effect on Buyer.

**4.5     No Broker.**  Buyer has not retained or used the services of an agent, finder or broker in connection with the transactions contemplated by this Agreement.  Buyer shall pay, and shall indemnify, hold harmless and defend Seller from and against, all commissions, finder's and other fees and expenses charged or asserted by any agent, finder or broker, by reason of any such retention or use of the services of any such agent, finder or broker by Buyer.

**4.6     Investigation.**  Buyer acknowledges and affirms that it has completed its own independent investigation, analysis and evaluation of the Purchased Assets, that it has made all such reviews and inspections of the Purchased Assets as it deems necessary and appropriate, and that in making its decision to enter into this Agreement, it has relied on its own investigation, analysis, and evaluation with respect to all matters without reliance upon any express or implied representations or warranties other than those expressly set forth in this Agreement, as to which it has relied.

**4.7     Funding.**   Buyer has all funding available to it to enable it to consummate its purchase of the Purchased Assets and to pay all of the other obligations of Buyer under this Agreement.  Buyer's entry into this Agreement and ability to perform under this Agreement is therefore not subject to any financing contingency.

**4.8     Representations and Warranties of Buyer.**  The representations and warranties of Buyer contained herein do not contain any statement of a material fact that was untrue when made or omits any information necessary to make any such statement contained therein, in light of the circumstances under which such statement was made, not misleading.  The copies of all documents

8

furnished by Buyer to Seller pursuant to the terms of this Agreement are complete and accurate copies of the original documents.

## ARTICLE V

## CONDUCT OF BUSINESS PENDING THE CLOSING

Between the date hereof and the Closing, and except as otherwise consented to by Buyer in writing, Seller covenants as follows:

**5.1    Access.**  Seller shall give to Buyer and its representatives, from and after the date of execution of this Agreement, access during normal business hours to the premises, employees, agents and consultants of Seller, and such copies of Seller's books and records, contracts and leases and other documentation, so as to enable Buyer to inspect and evaluate all aspects of the Business and operations, assets, operating results, financial condition, capitalization, ownership, and legal affairs relating to Seller's Business.  Buyer agrees to conduct its review, and to cause its representatives to conduct their review, in a manner designed to minimize any disruption of Seller's business.  Buyer will hold any confidential information obtained pursuant to this Section 5.1 in accordance with the confidentiality provisions of any non-disclosure agreement ("NDA") entered into between the Buyer and Seller.

**5.2    Conduct of Seller's Business.**  From the date of this Agreement and until the Closing or termination of this Agreement, whichever first occurs, Seller shall operate and conduct its business diligently and only in the ordinary course, consistent with past practices and not make any material change in its methods of accounting, management, marketing or operations.  In furtherance thereof, unless Buyer's prior consent to do otherwise is obtained (which consent shall not be unreasonably withheld or delayed), Seller shall:

(a)    **Organization.**  Use its good faith efforts to preserve intact its organization and use its reasonable efforts to retain all of its employees involved in its business and the services of all vendors, suppliers, agents and consultants to Seller, commensurate with the requirements of its Business;

(b)    **Insurance.**  Maintain insurance, including liability and errors and omissions insurance, consistent with past practices and, not take any action to terminate or modify, or permit the lapse or termination of, the present insurance policies and coverages of Seller;

(c)    **Lawsuits, Claims.**

(i)    Promptly notify Buyer of any post-bankruptcy lawsuit or other post-bankruptcy legal proceeding that is commenced, or that is threatened, in writing, against Seller and that (a) relates to or arises out of Seller's Business and, if adversely determined against Seller, could be expected to have a Material Adverse Effect on Seller, or (b) relates to any of the Purchased Assets or any of the transactions contemplated by this Agreement; and

(ii)    Not release, settle, compromise or relinquish any claims, causes of action or rights involving more than $10,000 individually or $25,000 in the aggregate which Seller may have against any other persons relating to the Purchased Assets, including, without limitation, claims or rights to reimbursement or payment for services rendered by Seller;

(d) **Certain Changes.** Not encumber or place any liens or security interests on any of the Purchased Assets post-bankruptcy, other than (i) liens or security interests in existence on the date hereof, (ii) statutory liens to secure taxes that are not yet due and payable, and (iii) purchase money security interests in connection with the acquisition of equipment in the ordinary course of Seller's Business consistent with past practices;

(e) **Condition of Assets.** Maintain in good working order and condition, ordinary wear and tear excepted, all of the Purchased Assets and not transfer or dispose of, by license or otherwise, any of the Purchased Assets, other than in the ordinary course of Seller's Business consistent with past practices;

(f) **Agreements.**

(i) Observe and perform all of its obligations under the Assigned Contracts;

(ii) Except as required by any existing contracts or agreements, not enter into any new agreement that would constitute an Assigned Contract or amend, cancel or terminate any Assigned Contract between the time of the Auction and the Closing;

(iii) Promptly notify Buyer in writing of the occurrence of any breach or default of any Assigned Contract; and

(iv) Not encourage or incentivize any employee involved in Seller's Business to leave their current position or alter their responsibilities with Seller or increase the compensation, incentive arrangements or other benefits of any employee other than in the ordinary course of Seller's Business consistent with past practices;

(g) **Consents; Compliance with Laws to the Extent Related to Seller's Business.**

(i) Use reasonable efforts to obtain all consents to assignments of governmental authorities which are customers of the Business, and maintain all other licenses, permits and franchises and rights to operate Seller's Business granted by, governmental authorities;

(ii) Not take any action which would be expected to result in a violation of or in the noncompliance with any laws or regulations applicable to Seller's Business; and

(iii) Cooperate with Buyer and render to Buyer such assistance as Buyer may reasonably request, at Buyer's sole expense, in obtaining such governmental consents and approvals;

(h) **Taxes.** Pay, when due, and prior to the imposition or assessment of any interest, penalties or liens by reason of the nonpayment of, all post-bankruptcy Taxes (as defined in Section 3.13 hereof), due or assessed against it, except for any Taxes being contested in good faith and for which reserves have been established by Seller; and

(i) **Representations and Warranties.** Not take any action that would make any representation and warranty of Seller inaccurate as of the Closing Date.

10

**5.3     Notification of Certain Matters.**  Seller shall give prompt notice to Buyer of (i) the occurrence or non-occurrence, to Seller's Knowledge, of any event the occurrence or non-occurrence of which would cause any representation or warranty of Seller contained in this Agreement to be untrue or inaccurate in any material respect at or prior to the Closing Date and (ii) any failure to comply with or satisfy any covenant, condition or agreement to be complied with or satisfied by it hereunder; provided, however, that the delivery of any notice pursuant to this Section 5.3 shall not limit or otherwise affect the remedies available hereunder to Buyer.

## ARTICLE VI

## OBLIGATIONS SURVIVING THE CLOSING

**6.1     Further Assurances.**  Each Party shall execute and deliver after the date hereof such instruments and take such other actions as the other Party may reasonably request in order to carry out the intent of this Agreement or to better evidence or effectuate the transactions contemplated herein.

**6.2     Expenses.**  Each Party shall pay all of its respective costs and expenses incurred or to be incurred by it in negotiating and preparing this Agreement and in carrying out and closing the transactions contemplated by this Agreement whether or not this Agreement or the transactions contemplated hereby are ever consummated.

**6.3     Taxes.**  Buyer shall pay all Taxes of any kind or nature arising from the sale and transfer of the Purchased Assets to the Buyer.  Seller shall pay all Taxes of any kind or nature arising from; (i) the conduct or operation of its business up to the Closing Date and the conduct or operation by Seller, prior to or after the Closing Date.  If any Taxes required under this Section 6.3 to be borne by Seller are assessed against the Buyer or any of the Purchased Assets, the Buyer shall notify Seller in writing promptly thereafter and Seller shall be entitled to contest, in good faith, such assessment or charge so long as such assessment does not materially adversely affect the Buyer or the Purchased Assets or the Buyer's business.  Notwithstanding the foregoing, the Buyer may (but shall not be obligated to) pay any such Taxes assessed against it, its business or any of the Purchased Assets, but which are payable by Seller pursuant hereto, if the Buyer's failure to do so, in the reasonable judgment of the Buyer, could result in the immediate imposition of an Encumbrance on any of the Purchased Assets or any other assets of the Buyer or if Seller fails to contest such assessment or charge diligently and in good faith.

## ARTICLE VII

## SURVIVAL OF REPRESENTATIONS AND WARRANTIES

All of the respective representations and warranties of Seller and the Buyer set forth in this Agreement or in any of such Party's disclosure schedules, or in any certificates delivered by such Party on the Closing Date shall survive the consummation of the transactions contemplated hereby for one year.  The covenants of any Party hereto that cannot be or are not fully performed by such Party on or prior to the Closing Date shall survive until they are otherwise terminated pursuant to their terms or fully performed.

## ARTICLE VIII

## CONDITIONS PRECEDENT TO THE OBLIGATIONS OF BUYER

The obligation of Buyer to consummate its purchase of the Purchased Assets from Seller is subject to the fulfillment, or the waiver by Buyer, at or prior to the Closing, of each of the following conditions precedent:

**8.1     Representations and Warranties.**  The representations and warranties made by Seller in this Agreement shall be true and correct in all material respects, unless modified by materiality in the representation or warranty, in which case they shall be true and correct in all respects, on the date hereof and at and as of the Closing Date, with the same force and effect as if made again at and as of that time.

**8.2     Absence of Material Litigation.**  There shall be (a) no pending or overtly threatened litigation (other than litigation which is determined by the parties in good faith, after consulting their respective attorneys, to be without legal or factual substance or merit), whether brought against Seller or Buyer, that seeks to enjoin the consummation of any of the transactions contemplated by this Agreement, (b) no order that has been issued by any court or governmental agency having jurisdiction that restrains or prohibits the consummation of the purchase and sale of the Purchased Assets hereunder and no proceedings pending which are reasonably likely to result in the issuance of such an order; and (c) no pending or overtly threatened litigation, which has had or is reasonably expected to have a Material Adverse Effect on Seller.

**8.3     Performance of Obligations.**  Seller shall have performed and complied, in all material respects, with all of the covenants required by this Agreement to have been performed prior to the Closing.

**8.4     Delivery of Additional Instruments.**  On the Closing Date, Seller shall deliver, or cause to be delivered to Buyer, the following documents and instruments, in form and substance satisfactory to Buyer and its counsel, unless waived in writing by Buyer:

(a)   The Bill of Sale and Assumption Agreement in substantially the form of Exhibit C hereto, duly executed by Seller (the "Bill of Sale");

(b)   Evidence of the receipt of all third-party consents necessary to enable Seller to consummate the transactions contemplated herein, which consents are identified on Schedule 8.5 except to the extent the Bankruptcy Court enters an order approving of Seller's assumption and assignment to Buyer of the Assigned Contracts; and

(c)   Such other documents and instruments as Buyer or Buyer's counsel may reasonably request so as better to evidence or effectuate the transactions contemplated hereby.

**8.5     Sale Order.**  The Bankruptcy Court shall have entered the Sale Order in form reasonably acceptable to Buyer, approving the sale or sale of the Purchased Assets on the terms specified in this Agreement.  The Sale Order shall provide that, among other things, the Purchased Assets are sold free and clear of Encumbrances; Buyer shall not be subject to successor liability on account of its purchase of the Purchased Assets; and the Sale Order shall not have been reversed, stayed, modified or amended in any manner materially adverse to Buyer.

# ARTICLE IX

## CONDITIONS PRECEDENT TO OBLIGATIONS OF SELLER

The obligation of Seller to consummate the sale of the Purchased Assets to Buyer is subject to the fulfillment, or the waiver by Seller, at or prior to the Closing, of each of the following conditions precedent:

**9.1     Representations and Warranties.**  The representations and warranties made by Buyer in this Agreement shall be true and correct in all material respects, unless modified by materiality in the representation or warranty, in which case they shall be true and correct in all respects, on the date hereof and at and as of the Closing Date, with the same force and effect as if made again at and as of that time.

**9.2     Absence of Material Litigation.**  There shall be (a) no pending or overtly threatened litigation (other than litigation which is determined by the parties in good faith, after consulting their respective attorneys, to be without legal or factual substance or merit), whether brought against Seller or Buyer that seeks to enjoin the consummation of any of the transactions contemplated by this Agreement, (b) no order that has been issued by any court or governmental agency having jurisdiction that restrains or prohibits the consummation of the purchase and sale of the Purchased Assets hereunder or any proceedings pending which are reasonably likely to result in the issuance of such an order, and (c) no pending or overtly threatened litigation which has had or is reasonably expected to have a Material Adverse Effect on Buyer.

**9.3     Performance of Obligations.**  Buyer shall have performed and complied in all material respects with all of its covenants required by this Agreement to have been performed by it at or prior to the Closing.

**9.4     Certificates.**  Seller shall have received from Buyer a certificate executed by an executive officer of Buyer, dated as of the Closing Date and reasonably satisfactory in form and substance to Seller, certifying that (i) each of the representations and warranties of Buyer contained herein is true and correct as set forth in Section 9.1 on and as of the Closing Date, and (ii) Buyer has performed and complied, with all of its covenants required to have been performed or complied, with by it pursuant hereto on or prior to the Closing Date.

**9.5     Delivery of Additional Instruments.**  On the Closing Date, Buyer shall deliver, or cause to be delivered to Seller, the following documents and instruments, in form and substance satisfactory to Seller and its counsel, unless waived in writing by Seller:

(a)   The Bill of Sale duly executed by Buyer;

(b)   Such other documents and instruments as Seller or Seller's counsel may reasonably request so as better to evidence or effectuate the transactions contemplated hereby; and

(c)   A legal opinion of Buyer's counsel reasonably satisfactory in form and substance to Seller.

**9.6     Delivery of Consideration.**  At the Closing the Buyer shall deliver to Seller a cash payment in the amount of the Purchase Price, wired into the Escrow Account.

# ARTICLE X

## THE CLOSING

The consummation of the transactions contemplated hereby (the "Closing") shall take place at the offices of Levene, Neale, Bender, Yoo & Brill L.L.P. or at such other place as the parties may agree and shall occur on a date which is no later than fifteen (15) business days after entry by the Bankruptcy Court of the Sale Order, or at such later date and time upon which the Buyer and Seller agree, subject to the satisfaction or waiver of the closing conditions set forth in Section 8 and Section 9 above (the "Closing Date").

**10.1    Closing Deliveries of Seller.**    At the Closing, Seller shall deliver, or cause to be delivered to Buyer, the documents and instruments set forth in Section 8 above, in form and substance reasonably satisfactory to Buyer and its counsel.

**10.2    Closing Deliveries of Buyer.**    At the Closing, Buyer shall deliver, or cause to be delivered, the Purchase Price to Seller and the documents and instruments set forth in Section 9 above, in form and substance reasonably satisfactory to Seller and its counsel.

# ARTICLE XI

## TERMINATION

**11.1    Termination.**    Notwithstanding anything contained in this Agreement to the contrary, this Agreement may be terminated at any time prior to the Closing Date:

(a)    by mutual written agreement of Buyer and Seller;

(b)    by Buyer if there has been a material breach by Seller of its representations, warranties or covenants set forth herein or if any condition to the obligation of Buyer under this Agreement to be complied with or performed by Seller at or before the Closing shall not have been complied with or performed at the time required for such compliance or performance and such noncompliance or nonperformance shall not have been waived by Buyer;

(c)    by either Buyer or Seller if any judgment, injunction, order or decree of a court or other governmental entity of competent jurisdiction enjoining Buyer or Seller from consummating the transactions contemplated by this Agreement shall have been entered; or

(d)    by Seller if there has been a material breach by Buyer of its representations, warranties or covenants set forth herein or if any condition to the obligation of Seller under this Agreement to be complied with or performed by Buyer at or before the Closing shall not have been complied with or performed at the time required for such compliance or performance and such noncompliance or nonperformance shall not have been waived by Seller;

**11.2    Procedure Upon Termination.**  In the event of termination of this Agreement by the Buyer or Seller or by both the Buyer and Seller pursuant to Section 11.1 hereof, the transactions contemplated herein shall be abandoned without further action by the Buyer or Seller.  In addition, if this Agreement is terminated as provided herein:

(a)    Each Party will redeliver all documents, workpapers and other material of any other party relating to the transactions contemplated hereby, whether so obtained before or after the execution hereof, to the party furnishing the same.

(b)    All information of a confidential nature received by any party hereto with respect to the business of any other party (other than information which is a matter of public knowledge or which has heretofore been or is hereafter published in any publication for public distribution or filed as public information with any governmental authority) shall continue to be subject to any NDA between Buyer and Seller.

(c)    Upon any termination of this Agreement pursuant to this Section 11, the respective obligations of the Parties under this Agreement shall terminate and no Party shall have any liability whatsoever to any other Party by reason of such termination, irrespective of the cause of such termination, except as set forth in this Section.

**11.3    Forfeiture of Deposit as Liquidated Damages**.

As indicated in Section 2.1 above, if Buyer is determined by the Bankruptcy Court to be the winning bidder at the Auction and Buyer fails to consummate its purchase within fifteen (15) business days following the date of entry of the Sale Order (unless Buyer and Seller agree to extend this period), Buyer shall be deemed to have permanently forfeited the Deposit with Seller as liquidated damages.

**ARTICLE XII**

**MISCELLANEOUS**

**12.1    Assignment.**  Neither Seller nor Buyer may assign this Agreement, or assign its rights or delegate its duties hereunder, without the prior written consent of the other Party.  This Agreement will be binding upon, inure to the benefit of, and be enforceable by the Parties and their respective successors and assigns.

**12.2    Severability.**  Any provision of this Agreement which is illegal, invalid or unenforceable shall be ineffective to the extent of such illegality, invalidity or unenforceability, without affecting in any way the remaining provisions hereof.

**12.3    Governing Law.**  This Agreement shall be governed by and construed in accordance with the Bankruptcy Code, to the extent applicable, and, where state law is implicated, the internal laws of the state of California, without giving effect to any principles of conflicts of law.  Without limiting any Party's right to appeal any Order of the Bankruptcy Court, the Parties agree that if any dispute arises out of or in connection with this Agreement or any of the documents executed hereunder or in connection herewith, the Bankruptcy Court shall have exclusive personal and subject matter jurisdiction and shall be the exclusive venue to resolve any and all disputes relating to this Agreement.  The Bankruptcy Court shall have sole jurisdiction over such matters and the parties

affected thereby, and Buyer and Seller each hereby consent and submit to such jurisdiction; provided, however, that if the Bankruptcy Case has closed and cannot be reopened, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the district in which the Bankruptcy Court is located and any appellate court thereof, for the resolution of any such claim or dispute. The Parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute.  Each of the Parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  In the event any such action, suit or proceeding is commenced, the Parties hereby agree and consent that service of process may be made, and personal jurisdiction over any Party hereto in any such action, suit or proceeding may be obtained, by service of a copy of the summons, complaint and other pleadings required to commence such action, suit or proceeding upon the Party at the address of such Party set forth in Section 12.8 hereof, unless another address has been designated by such Party in a notice given to the other Party in accordance with the provisions of Section 12.8 hereof.

   **12.4 Entire Agreement; Amendment.**  This Agreement and the Exhibits and Schedules hereto, and each additional agreement and document to be executed and delivered pursuant hereto, constitute all of the agreements of the Parties with respect to, and supersede all prior agreements and understandings relating to the subject matter of, this Agreement or the transactions contemplated by this Agreement.  This Agreement may not be modified or amended except by a written instrument specifically referring to this Agreement signed by the Parties.

   **12.5 Waiver.**  No waiver by one Party of the other Party's obligations, or of any breach or default hereunder by any other Party, shall be valid or effective, unless such waiver is set forth in writing and is signed by the Party giving such waiver; and no such waiver shall be deemed a waiver of any subsequent breach or default of the same or similar nature or any other breach or default by such other Party.

   **12.6 Interpretation; Headings.**  This Agreement is the result of arms'-length negotiations between the Parties and no provision hereof, because of any ambiguity found to be contained therein or otherwise, shall be construed against a Party by reason of the fact that such Party or its legal counsel was the draftsman of that provision.  The section, subsection and any paragraph headings contained herein are for the purpose of convenience only and are not intended to define or limit or affect, and shall not be considered in connection with, the interpretation of any of the terms or provisions of this Agreement.

   **12.7 Counterparts.**  This Agreement may be executed in separate counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  This Agreement shall become effective when counterparts have been signed by each of the Parties and delivered by facsimile or other means to the other Party.

   **12.8 Notices.**  Any notice shall be in writing and shall be deemed to have been duly given or made when personally delivered, sent by facsimile or when mailed by registered or certified mail, postage prepaid, return receipt requested, addressed or directed as follows, or as may be furnished hereafter by notice, in writing, to the other Party on at least three (3) business days' prior notice, to the following parties. Any Party may from time to time, by written notice to the other Party, designate a different address, which shall be substituted for the one specified below:

16

If to Seller:

> West Coast Distribution, Inc.
> 2602 E. 37th Street
> Vernon, California 90058
> Attn:  President
> Fax:  (___) ___-____

with a copy to (which shall not constitute notice) given in a like manner to:

> Ron Bender, Esq.
> Lindsey L. Smith, Esq.
> LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
> 10250 Constellation Blvd., Suite 1700
> Los Angeles, California 90067
> Email: rb@lnbyb.com/lls@lnbyb.com
> Fax:  (310) 229-1244

If to Buyer, to:

> _____
> _____
> _____
> Attn:  President
> Fax:  (___) ___-____

with a copy to (which shall not constitute notice) given in a like manner to:

> _____
> _____
> _____
> Attn: _____
> Fax:  (___) ___-____

**12.9    Public Announcements.**    Neither Seller or Buyer will make any public announcements concerning matters set forth in this Agreement or the negotiation thereof without the prior written consent of the other Party unless such disclosure is required by law or court order.  Any such disclosure shall be provided for review to the other Party in advance of public release to the extent reasonably practical.

**12.10    Attorneys Fees.**    If any action or proceeding relating to this Agreement or the enforcement of any provision of this Agreement is brought by a Party against any other Party, the prevailing Party shall be entitled to recover reasonable attorneys' fees, costs and disbursements (in addition to any other relief to which the prevailing Party may be entitled).

**[SIGNATURES ON FOLLOWING PAGE]**

IN WITNESS WHEREOF, each of Seller and Buyer has caused a duly authorized representative to execute this Asset Purchase Agreement on the date first written above.

**BUYER:**

_____,
a _____ corporation

By:    _____

Name:  _____
Title:  _____

**SELLER**:

**West Coast Distribution, Inc.**
a California corporation

By:    _____

Name:  _____
Title:  _____

18

## __SCHEDULES__

Schedule 1.1(a)        Fixed Assets

Schedule 1.1(b)        Assigned Contracts

Schedule 1.1(d)        Accounts and Notes Receivable

Schedule 1.1(f)        Licenses and Permits

Schedule 1.1(g)        Leased Real Property

Schedule 1.1(h)        Inventory

Schedule 1.1(i)        Intellectual Property Rights

Schedule 1.1(l)        Customer Lists

Schedule 1.2        Excluded Assets

Schedule 1.3        Assumed Obligations

Schedule 3.3        Exceptions to Purchased Assets Sold Free/Clear of Encumbrances

Schedule 8.5        Third Party Consents

## __EXHIBITS__

Exhibit A        Definitions

Exhibit B        Purchase Price Allocation

Exhibit C        Form of Bill of Sale and Assumption Agreement

# EXHIBIT A

## Definitions

For the purposes of this Agreement, unless the context otherwise requires, the following terms shall have the respective meanings set forth below and grammatical variations of such terms shall have corresponding meanings:

"**Auction**" means the auction sale to be held at the Bankruptcy Court at the date and time determined by the Bankruptcy Court.

"**Encumbrance**" means any encumbrance, lien, charge, hypothecation, pledge, mortgage, title retention agreement, security interest of any nature, restriction (other than restriction on transfer with respect to the Assigned Contracts), condition or any adverse interest of any nature, claim, exception, right of set-off, reservation, easement, right of occupation, any matter capable of registration against title, option, right of pre-emption, privilege, restriction, condition or any adverse interest of any nature, or any contract to create any of the foregoing.

"**Intellectual Property Rights**" means, collectively, all (i) U.S. and foreign, whether registered or unregistered, patents, trademarks, trade names, trade dress, service marks, copyrights, and applications therefor, (ii) computer software programs or applications (in both source code and object code form), (iii) industrial models, inventions, invention disclosures, author's rights, designs, utility models, inventor rights, schematics, technology, (iv) trade secrets, know-how, and other tangible information or material, and (v) confidential information and any other proprietary data or information of any nature or form.

"**Knowledge**" of a party shall mean the actual knowledge of any executive officer and the knowledge that a reasonable person in such capacity would have obtained in the conduct of his or her business under the same circumstances of service.

"**Material Adverse Effect on Seller**" and "**Material Adverse Effect on its Business**" shall both mean a circumstance, state of facts, event, consequence or result that materially and adversely affects, or could reasonably be expected to affect materially and adversely the Purchased Assets or the business operations, or condition (financial or otherwise) of Seller's Business or the ability of Seller to consummate the transactions which it is required to consummate hereunder.

"**Material Adverse Effect on Buyer**" and "**Material Adverse Effect on its Business**" shall mean a circumstance, state of facts, event, consequence or result that materially and adversely affects, or could reasonably be expected to affect materially and adversely business or the financial condition or operating results of Buyer or the ability of Buyer to consummate the transactions which it is required to consummate hereunder.

**EXHIBIT B**

**<u>Purchase Price Allocation</u>**

**EXHIBIT C**

**Form of Bill of Sale and Assumption Agreement**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90017.

A true and correct copy of the foregoing document entitled **NOTICE OF SALE OF ESTATE PROPERTY** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On ***October 30, 2019***, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Jessica L Bagdanov    jbagdanov@bg.law, ecf@bg.law**
- **Ron Bender    rb@lnbyb.com**
- **Beth Gaschen    bgaschen@wgllp.com, kadele@wgllp.com;vrosales@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com**
- **Richard H Golubow    rgolubow@wcghlaw.com, pj@wcghlaw.com;jmartinez@wcghlaw.com;Meir@virtualparalegalservices.com**
- **David M Goodrich    dgoodrich@wgllp.com, vrosales@wgllp.com;kadele@wgllp.com**
- **Deb Harris    deb_harris@karney.net, deb.har3@outlook.com**
- **D Edward Hays    ehays@marshackhays.com, 8649808420@filings.docketbird.com**
- **Jeffrey A Krieger    jkrieger@ggfirm.com, kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com**
- **Kenneth G Lau    kenneth.g.lau@usdoj.gov**
- **Matthew A Lesnick    matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com**
- **Tinho Mang    tmang@marshackhays.com, 8444806420@filings.docketbird.com**
- **Catherine Schlomann Robertson    crobertson@pahl-mccay.com, mle@pahl-mccay.com**
- **Ariella T Simonds    asimonds@ktbslaw.com**
- **Lindsey L Smith    lls@lnbyb.com, lls@ecf.inforuptcy.com**
- **Marcus Tompkins    mtompkins@ygalaw.com**
- **United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov**
- **Reed S Waddell    rwaddell@frandzel.com, sking@frandzel.com**
- **Alan J Watson    alan.watson@hklaw.com, rosanna.perez@hklaw.com**

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On ***October 30, 2019***, I will serve the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***October 30, 2019,*** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**SERVED BY PERSONAL DELIVERY**

The Hon. Sheri Bluebond
United States Bankruptcy Court
255 E. Temple Street, Suite 1534 / Courtroom 1539
Los Angeles, CA 90012

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 30, 2019 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**